**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
-----------------------------x
                             :
ARTIE JAMES GRAY             :      Civil No. 1:16CV00718 (HBF)
                             :
v.                           :
                             :
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Artie James Gray brings this action pursuant to
42 U.S.C. §405(g), seeking review of a final decision of the
Commissioner of Social Security which denied his application for
Supplemental Security Income ("SSI") under Title XVI of the
Social Security Act, 42 U.S.C. §401 et seq. ("the Act").
Plaintiff has moved to reverse or remand the case for a
rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for
Judgment on the Pleadings **[Doc. #16]** is **DENIED.** Defendant's
Motion and Motion for Judgment on the Pleadings **[Doc. #18]** is
**GRANTED.**

## I. ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed.
Plaintiff protectively filed an application for SSI on February
6, 2013, alleging disability as of April 1, 2004. [Certified

Transcript of the Record, Compiled on December 13, 2016, Doc. #9 (hereinafter "Tr.") 18, 139-44]. Plaintiff alleged disability due to: paranoid schizophrenia, back issues, high blood pressure and diabetes. [Tr. 170]. His SSI claim was denied on August 28, 2013. [Tr. 65-70]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on October 16, 2013. [Tr. 89-97].

On August 15, 2016, Administrative Law Judge ("ALJ") Eric L. Glazer held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 34-64]. On February 9, 2016, the ALJ found that plaintiff was not disabled, and denied his claim. [Tr. 15-33]. Plaintiff filed a timely request for review of the hearing decision on April 4, 2016. [Tr. 12-14]. On July 11, 2016, the Appeals Council denied review, thereby rendering ALJ Glazer's decision the final decision of the Commissioner. [Tr. 1-4]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

II.  **STANDARD OF REVIEW**

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether

the determination is supported by substantial evidence. <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the

appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Mr. Gray must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c)(requiring that the impairment "significantly limit[ ] ... physical or mental ability to do basic work activities" to be considered "severe").[1]

---

[1] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV. THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Glazer concluded that plaintiff was not disabled under the Social Security Act. [Tr. 15-33]. At step one, the ALJ found

that plaintiff had not engaged in substantial gainful activity since February 6, 2013, the application date.[2] [Tr. 20].

At step two, the ALJ found that plaintiff had a cerebral vascular ("CVA") accident that is a severe impairment under the Act and regulations. Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 23-24]. The ALJ specifically considered Listings 1.04 (disorders of the spine) and 11.04 (central nervous system vascular accident). [Tr. 23-24]. The ALJ also conducted a psychiatric review technique and found that plaintiff had a mild restriction in activities of daily living, social functioning, and concentration, persistence or pace. [Tr. 22-23]. The ALJ found no episodes of decompensation. [Tr. 23].

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform light work as defined in 20 C.F.R.
> 416.967(b) except he can frequently lift and carry,
> push and pull 10 pounds and occasionally lift and
> carry, push and pull 20 pounds. He can sit, stand and
> walk for six hours each in an eight-hour workday. He
> can frequently climb ramps and stairs, and
> occasionally climb ladders and scaffolds. He should
> not perform repetitive stooping, kneeling or
> crouching. He should not handle, sell or prepare

---

[2] SSI benefits are not payable for any period prior to the month after the application is filed. See 42 U.S.C. §1382(c)(7); 20 C.F.R. §§416.335, 416.501.

controlled narcotic substances or alcoholic beverages.
Time off task can be accommodated by normal breaks.
[Tr. 24-26].

At step four, the ALJ found plaintiff has no past relevant work. [Tr. 26]. At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 26-27].

## V.   DISCUSSION

Plaintiff makes several arguments in support of his position that the ALJ's decision should be reversed. The Court will address these arguments in turn.

### A.   Evaluation of Opinion Evidence

Plaintiff first argues that the Commissioner erred in not providing the consultative examiner, Dr. John Schwab, with plaintiff's treatment records prior to his consultative examination and, as a result, his opinion did not support the ALJ's step two and RFC findings.[3] [Doc. #16 at 15-20]. Second, plaintiff contends that the Commissioner erred in not paying for any tests related to plaintiff's diabetes, cardiac problems, cerebral accident, or back pain. Last, plaintiff argues that the ALJ's step two and RFC determination cannot be upheld because

---

[3] Dr. John Schwab performed a consultative internal medical examination on August 27, 2013. [Tr. 428-31].

Dr. Schwab provided the only medical opinion of record.

In considering the opinion evidence, the ALJ assigned "great weight" to the August 27, 2013, opinion of consultative psychiatric examiner Dr. Susan Santarpaia, [Tr. 424-27]; the August 27, 2013, opinion of consultative internal medical examiner Dr. John Schwab, [Tr. 428-31]; and the August 29, 2013, opinion by DDS physician Dr. Martha Totin. [Tr. 66-77]. The ALJ found that all three opinions were consistent with the medical evidence of record. [Tr. 26]. Dr. Schwab's opinion is the only opinion with which plaintiff takes issue, despite the fact Dr. Santarpaia also relied on plaintiff's self-report and was not provided with medical records prior to rendering an opinion. [Tr. 424-27]. On the other hand, non-examining DDS physician Dr. Totin was provided with medical records prior to rendering her opinion. [Tr. 66-77].

As to the first point of argument, defendant correctly states that "there is no clear regulatory requirement that a consultative examiner must be provided a plaintiff's medical records." [Doc. #17-1 at 17 (citing 20 C.F.R §416.919n(c); Johnson v. Colvin, No. 13-CV-3745(KAM), 2015 WL 6738900, at *14-15 (E.D.N.Y Nov. 4, 2015), aff'd sub nom. Johnson v. Comm'r of Soc. Sec., 669 F. App'x 580 (2d Cir. 2016) (finding that 20 C.F.R. §416.917 and 20 C.F.R.§404.1517 did "not amount to a requirement that every consulting physician be provided with all

of a claimant's medical records and history (much less a requirement that the physician report that she viewed every, or any, document in the record)."); see Genovese v. Astrue, No. 11-CV-02054 (KAM), 2012 WL 4960355, at *18 (E.D.N.Y. Oct. 17, 2012) ("The SSA's statement that an examiner must be given 'necessary background information about [a claimant's] condition,' 20 C.F.R. §§ 404.1517, 416.917, does not mandate that 'the examiner must be provided with plaintiff's medical records,' as plaintiff asserts it does."). Plaintiff fails to cite any applicable law in support of his argument.

Despite making two related statements that the Commissioner failed to pay for "any tests" and/or "lab results",[4] plaintiff did not further develop this argument or cite statutory or regulatory authority to support it. The Court construes these statements/arguments as contesting the weight the ALJ assigned to Dr. Schwab's opinion and will address this contention below.

"It is well-settled that a consulting [] examiner's opinion may be given great weight and may constitute substantial evidence to support a decision." Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (citing Diaz v.

---

[4] Plaintiff's argument consists of these two statements, "[n]or did the Commissioner pay for any tests as it related to Mr. Gray's diabetes, cardiac problems, cerebral accident, or back pain" [doc. #16-1 at 15], and "[n]or did Dr. Schwab conduct any tests or request any lab results," [Doc. #16-1 at 16].

Shalala, 59 F.3d 307, 315 (2d Cir. 1995) (finding no error in ALJ's reliance on "[t]he opinions of three examining physicians, plaintiff's own testimony, and [certain] medical tests"); accord Rosier v. Colvin, 586 F. App'x 756, 758 (2d Cir. 2014) (summary order) (consultative examiner's opinion constitutes substantial evidence supporting ALJ's decision to accord little weight to treating source); Monroe v. Comm'r of Soc. Sec., 2016 WL 7971330, at *8 (N.D.N.Y. Dec. 29, 2016) ("[T]he Second Circuit has made it clear that the opinions of State agency medical consultants ... may constitute substantial evidence to support an ALJ's RFC determination."); Mayor v. Colvin, 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015) ("It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions") (citing cases)).

Further, an ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§416.945(a), 416.946(c). A plaintiff's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Walker v. Astrue, No. 1:08CV00828(RJA)(JJM), 2010 WL 2629832, at

*6 (W.D.N.Y. June 11, 2010)(quoting Lewis v. Comm'r of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. See 20 C.F.R. §416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.") 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). "A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." Reynolds v. Colvin, 570 F. App'x 45, 47 (2d Cir. 2014).

The Court has painstakingly reviewed the record and finds that there is no error in the ALJ's decision to give "great weight" to the consultative evaluation of Dr. Schwab. There is significant evidence to support the ALJ's assessment that the opinion is "consistent with the medical evidence of record". [Tr. 26]. Importantly, the substantial evidence supports the ALJ's RFC finding.

Treatment notes show that while plaintiff had some limited range of motion of his spine, his gait was normal; he had full strength and full range of motion of his upper and lower extremities; he had no trouble bathing, dressing, grooming, or toileting, ambulates without assistive devices, experienced "moderate" pain and was neurologically intact. Symptoms of limited range of motion and moderate pain were periodic and transient. [Tr. 260, 264, 271, 277, 470, 489, 550, 634, 638-39, 641-42, 644-45, 647-48, 650-51, 653, 661, 666, 671, 679, 684, 692, 771, 775, 777, 781, 783, 787, 788, 797, 799, 804-05, 826-27, 835, 839-40, 845, 855-56, 859-61, 865-66, 868, 872-73, 876-77, 879, 884-85, 889-90, 892, 896-97, 899, 908, 919, 922, 927, 929-30, 935-36, 938].[5]

Although plaintiff experienced weakness and various symptoms following an April 2013 cerebrovascular accident (CVA), shortly thereafter his condition stabilized and his symptoms improved without lasting deficits. The medical evidence shows

---

[5] Importantly, the only electronic imagining of plaintiff's spine, dated December 2014 (x-ray) and February 2015, (MRI), and treatment with the New York Spine and Wellness Center post-date the CE performed by Dr. Schwab in August 2013. [Tr. 663, 668, 659-89]. Moreover, records from the New York Spine and Wellness Center indicate that plaintiff reported he got temporary relief from an epidural steroid injection in March 2015 and "significant relief" "75% of pain relief" from a left tranforaminal epidural steroid injection in May 2015. [Tr. 674-75; 686, 689]. The last treatment record from New York Spine and Wellness Center is dated June 29, 2015. [Tr. 689].

that plaintiff was otherwise neurologically intact, had full range of motion, and full strength in his extremities. [Tr. 284-87, 354, 366-69 (discharge summary), 406, 422, 430, 446, 456, 807, 816, 823, 835, 840, 856, 861, 868, 873, 879, 885, 892, 899, 908, 920, 924, 930, 938]. Similarly, the ALJ did not solely rely on CE Dr. Schwab's opinion in his evaluation of the medical evidence associated with plaintiff's asthma, hypertension, diabetes or mental health treatment. [Tr. 20-26]. Importantly, plaintiff has cited no evidence of record that the ALJ failed to consider in rendering his RFC assessment. It is clear from a review of the ALJ's opinion that he considered the entire record in assessing plaintiff's RFC.

Accordingly, the Court finds that the ALJ did not err in assigning "great weight" to the consultative evaluation of Dr. Schwab's opinion and finding that his opinion is consistent with the medical evidence of record. [Tr. 26]. The Court further finds that the ALJ's RFC is supported by substantial evidence of record.

### B.    Evaluation of Pain and Other Symptoms

Plaintiff next argues that the ALJ erred in failing to properly analyze his subjective allegations of pain and other symptoms. The Court disagrees.

The ALJ is required to assess the credibility of a plaintiff's subjective complaints in a two-step process. See

generally 20 C.F.R. §§404.1529, 416.929. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. See 20 C.F.R. §§404.1529(b), 416.929(b). Second, the ALJ must assess the credibility of the plaintiff's complaints regarding the intensity, persistence, or functionally limiting effects of the symptoms. See 20 C.F.R. §§ 404.1529(c), 416.929(c). To do this, the ALJ must determine if objective evidence alone supports the plaintiff's complaints; if not, the ALJ must consider other factors described in 20 C.F.R. §§ 404.1529(c) and 416.929(c). See Skillman v. Astrue, No. 08CV6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010). These factors include: "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; and (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain." Id. (citations omitted).

"Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to

perform work-related activities for an adult ....” Social
Security Ruling (“SSR”) 16-3P, at *5 (S.S.A. Oct. 25, 2017).

Furthermore, an ALJ's decision "must contain specific
reasons for the weight given to the individual's symptoms, be
consistent with and supported by the evidence, and be clearly
articulated so the individual and any subsequent reviewer can
assess how the adjudicator evaluated the individual's symptoms”
Id. at *10. “Put another way, an ALJ must assess subjective
evidence in light of objective medical facts and diagnoses.”
Williams, 859 F.2d at 261 (2d Cir. 1988); Kessler v. Colvin, 48
F. Supp. 3d 578, 594 (S.D.N.Y. 2014)(“In assessing a claimant's
credibility, the ALJ must consider all of the evidence in the
record and give specific reasons for the weight accorded to the
claimant's testimony.”)(citing Lugo v. Apfel, 20 F. Supp. 2d
662, 663 (S.D.N.Y. 1998)).

Here, ALJ Glazer concluded that Gray's combination of
impairments could reasonably be expected to produce his alleged
symptoms, but that his statements concerning the intensity,
persistence, and limiting effects of his symptoms were not
entirely credible in light of the treatment records and his own
hearing testimony. [Tr. 24-25]. The ALJ provided a thorough
discussion of the basis for his assessment of plaintiff's
complaints of pain and other symptoms. [Tr. 21-26] After
summarizing plaintiff's testimony, the ALJ reviewed the

objective evidence of record, finding that the record did not
support the plaintiff's claims that his chronic pain and other
medical impairments produced the functional limitations he
claimed. [Tr. 21-26].

The ALJ properly noted that plaintiff recovered well from a
2013 CVA and there were no recurring symptoms or events. [Tr.
22-25]. Further, the ALJ correctly noted that plaintiff's
activities of daily living, social functioning and
concentration, persistence and pace were mildly limited. The ALJ
noted that Gray was able to shop, use public transportation,
cook, and walk four blocks daily; he was able to dress, bathe
and groom independently and manage his own money; his attention
and concentration were intact and he was able to perform one and
two step mathematical calculations and serial subtractions. [Tr.
22, 177-81, 194, 196-97, 426, 429]. Plaintiff's ability to
perform these activities is inconsistent with his allegations of
total disability.

Treatment records from Urban Family Medical Practice
consistently note that plaintiff reported moderate back pain
when his back was symptomatic [Tr. 731, 737, 742, 748, 759, 797,
804, 826, 859, 865, 876, 889]. When back pain was present,
treatment notes state that plaintiff had "no trouble with
bathing, communicating, dressing, eating, grooming or toileting"
and he "denie[d] associated bladder dysfunction, bowel

dysfunction, giving out and weight loss." Id. Moreover,
plaintiff's complaints of back pain were not constant; the
majority of treatment notes reflected that plaintiff's treating
physicians noted no complaints of back pain. [Tr. 258, 727, 754,
764, 769, 774, 780, 786, 791, 813, 821, 833, 838, 844, 849, 854,
871, 883, 905, 918, 921]. According to his treatment records,
plaintiff did not use an assistive device to ambulate, and was
not prescribed one by his physicians. Finally, plaintiff began
treating at New York Spine and Wellness Center in December 2014,
[Tr. 659 (12/10/14), Tr. 664 (2/11/15), Tr. 669 (3/12/15), Tr.
676 (4/20/15), Tr. 681 (5/18/15), Tr. 689 (6/29/15)], and
responded to conservative treatment. [Tr. 676 (reporting "about
3-4 days of improvement, particularly with regards to his lower
back" after a caudal epidural steroid injection); Tr. 681 ("His
pain is improved from a caudal ESI, particularly his back" and
reported "good benefit" using Hydrocodone and Soma); Tr.689
("reporting significant relief of his left leg pain following
[transforaminal epidural] injection." "75% of pain relief was
provided, which is ongoing.")].

Defendant accurately points out that "[p]laintiff's
credibility was also undermined by his failure to follow
prescribed treatment for his diabetes and hypertension." [Doc.
17-1 at 22 (citing Tr. 269, 386, 444, 454, 511, 774, 783, 797,
833, 838, 854, 865, 871)]. Treatment records from Urban Family

Practice "strongly urged" plaintiff to be compliant with taking
his hypertensive and diabetes medication and watch his diet or
he is at risk of a stroke. [Tr. 261-62, 267, 272-73, 388-89,
447-48, 457, 511, 783-84, 801, 868-69, 871]. Plaintiff
consistently denied any side effects from his medications and
when he was compliant with his treatment regimen, his condition
improved. [Tr. 21, 258, 269, 275, 444, 454, 780, 791, 804, 813,
821, 826, 833, 838, 849, 854, 859, 865, 871, 876, 889, 896, 899-
902, 905, 921, 927, 935, 938-40]; see Stackhouse v. Berryhill,
1:17-CV-00315-MAT, 2018 WL 4292155, at *2 (W.D.N.Y. Sept. 10,
2018)("An ALJ is permitted to consider[] a claimant's failure to
seek treatment for alleged disabilities when assessing
credibility" so long as the ALJ considers any explanations
offered by the claimant that would explain why treatment was
infrequent or irregular). Similarly, plaintiff's back pain
improved with medication and treatment with epidural injections.
[Tr. 676 (reporting "about 3-4 days of improvement, particularly
with regards to his lower back" after a caudal epidural steroid
injection); Tr. 681 ("His pain is improved from a caudal ESI,
particularly his back" and reported "good benefit" using
Hydrocodone and Soma); Tr. 689 ("reporting significant relief of
his left leg pain following [transforaminal epidural]
injection." "75% of pain relief was provided, which is
ongoing.")]; see Campbell v. Comm'r, 465 F. App'x 4, 2012 WL

29321, at *3 (2d Cir. Jan. 6, 2012)(noting that when claimant experienced a seizure, "it was often caused by his failure to take his medication."). Plaintiff also testified that his mental health symptoms improved with medication and when he abstained from drinking alcohol. [Tr. 51-52]. Here, plaintiff offered no reason for his failure to consistently take medications as prescribed or follow his physician's treatment plan. "When a claimant fails to take medication as prescribed without good reason, his or her credibility is undermined." Hicks v. Astrue, No. 09-CV-1071S, 2011 WL 3273141, at *4 (W.D.N.Y. July 29, 2011); Dennis v. Berryhill, 6:16-cv-6750(MAT), 2018 WL 488942, at *7 (W.D.N.Y. Jan. 19, 2018) (finding "it was proper for the ALJ to consider plaintiff's failure to follow his providers' treatment recommendations in assessing his credibility."); see Snitzer v. Astrue, No. 09-CV-2705 CBA, 2011 WL 1322274, at *10 (E.D.N.Y. Mar. 31, 2011) ("[Claimant] offered no persuasive reason for his failure to seek treatment, such as his inability to pay or the fact that he had previously sought treatment and found it unhelpful.").

The ALJ identified a number of specific reasons for his credibility determination, which are supported by substantial evidence in the record, and the Court will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x. 231, 234 (2d Cir. 2010) ("It is the function of the Commissioner, not the

reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."). Moreover, the ALJ had the opportunity to personally observe plaintiff and her testimony, something the Court cannot do. Stackhouse, 2018 WL 4292155, at *2 ("Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence.")(quoting Hargave v. Colvin, No. 12-CV-6308(MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014)).

Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

## VI. CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #16]** is **DENIED.** Defendant's Motion for Judgment on the Pleadings **[Doc. #17]** is **GRANTED.**

Plaintiff's Complaint [Doc. #1] is **DISMISSED with PREJUDICE.** The Clerk of the Court is directed to enter judgment and close this case.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #20] on September 25, 2018, with appeal to the Court of Appeals. Fed.

R. Civ. P. 73(b)-(c).

   SO ORDERED at Bridgeport, Connecticut this 2nd day of

November 2018.

                                    _____/s/_____
                                    HOLLY B. FITZSIMMONS
                                    UNITED STATES MAGISTRATE JUDGE